## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | |
|---|---|
| **CHERI WILLARD** | ) |
| | ) |
| **COMPLAINANT** | ) |
| | ) |
| **VS.** | ) **Case No.** |
| | ) |
| **ALEJANDRO MAYORKAS, ACTING SECRETARY** | ) |
| | ) |
| **RESPONDENT** | ) |

## COMPLAINT AND JURY DEMAND

COMES NOW Complainant, CHERI WILLARD, by and through her undersigned counsel, and files this Complaint for damages for her causes of action against Defendant the United States Department of Homeland Security, U.S. Citizenship and Immigration Services. Complainant alleges as follows:

### JURISDICTION AND VENUE

1. This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq*.

2. As this Complaint asserts federal causes of action arising under the laws of the United States, jurisdiction is appropriate pursuant to 28 U.S.C. § 1331.

3. Complainant was employed by the Defendant in Kansas City, Missouri. Pursuant to 28 U.S.C. § 139, venue properly lies in this judicial district in that the alleged unlawful employment practices were committed within the jurisdiction of the United States District Court for the Western District of Missouri, specifically in Kansas City, Missouri, and the Defendant is a government employer who is subject to the jurisdiction of this Court.

## PARTIES

4.      Complainant, Cheri Willard, is a United States citizen.  She resides in the greater Kansas City area.

5.      Complainant is a disabled female who has participated in protected activity.

6.      Defendant Alejandro N. Mayorkas, in his capacity as Secretary of the U.S. Department of Homeland Security, is located in Washington, D.C.

7.      The United States of America and its Agency, United States Department of Homeland Security is in Overland Park, Kansas.

## ADMINISTRATIVE PROCEDURES

8.      Complainant timely filed her formal complaint.  That administrative Complaint of Discrimination was assigned Agency Case Nos. HS-CIS-00552019 and HS-CIS-00932-2020, EEOC Case no. 560-2020-00060x and .EEOC No. 560-2020-00060X.

9.      Complainant's administrative Complaints of Discrimination alleged that she was discriminated against on the basis of her age, disability, sex, reprisal and retaliation because of prior protected activity.

10.      Complainant has exhausted all administrative remedies in that on August 20, 2021, Defendant issued its Final Agency Decision on Complainant's claims.

11.      Complainant timely filed this lawsuit within 90 days of the receipt of the Final Agency Decision.

12.      All of Complainant's claims alleged in this Complaint were considered during the administrative investigation of her administrative Complaints of Discrimination and they reasonably followed from the allegations contained in the administrative complaints of discrimination, reprisal, and retaliation.

13.     Pursuant to 42 U.S.C. § 2000e-16(c), Complainant therefore invokes her right to bring this civil action in that she has satisfied all administrative and judicial prerequisites to the institution of this action.

## ALLEGATIONS COMMON TO ALL COUNTS

14.     Complainant is a disabled Caucasian female over the age of 40 who has engaged in prior protected activity including raising concerns about racism in the processing of applications by individuals seeking to gain admission to the United States.

15.     Complainant was hired as a GS-1801-9 Immigration Services Officer (ISO), National Benefits Center (NBC), Special Immigrant Juveniles (SIJ) Adjudications, Overland Park, Kansas.  She had worked for the Agency over six years at the time the Agency terminated her.

16.     Ms. Willard received evaluations indicating she met expectations in all years prior to her performance appraisal in 2020.

17.     On or about June 2019, Ms. Willard filed a formal complaint of discrimination against the Agency for failing to reasonably accommodate her disability, harassment and retaliation arising from the assertion of her rights under The Rehabilitation Act of 1973, Title VII and FMLA.

18.     The issues in Complainant's Formal Complaint include the following:

   a.  On or around August 7, 2018, Complainant requested a reasonable accommodation of a chair and Complainant's first line supervisor subjected her to rebuke and immediate denial of the request.

   b.  In or around August 2017, while Complainant was on leave for a serious health condition, management subjected Complainant to ridicule and threatened to charge her with absent without leave.

    c.  From June 2017 and through March 25, 2019, management subjected Complainant to increased scrutiny of her work and was required to go over things repeatedly, she was insulted and told "you aren't that smart," and she was denied special assignments.

    d.  On November 30, 2018, Complainant received a copy of her 2018 Performance Plan and Appraisal with negative narrative comments, days after Complainant and her supervisor discussed her rating and Complainant's signing the appraisal on October 25, 2018.

    e.  In and around November 2018, Complainant learned she was not selected for an Immigration Services Officer II position, advertised under Vacancy Announcement CIS-10208668-NBC.

    f.  On February 21, 2019, she was given a letter of counseling.

    g.  On or about August 9, 2019, the ergonomic chair Complainant received as a reasonable accommodation was ordered without the necessary lumbar support accessory.

19.    In her second complaint, Ms. Willard alleged that from November 1, 2019 and through January 2, 2021, she was subjected to harassment.  Some incidents provided as examples include the following:

    a.  During this timeframe management reviewed 100% of Complainant's work.

    b.  On January 13, 2020, an email was timing out early which impacted Complainant's efficiency.

    c.  On February 3, 2020, an employee kept interrupting her meeting with her supervisor.

     d.   In approximately early October 2020, an employee was assigned to the cubicle next to Complainant's cubicle in violation of the distancing requirements due to COVID-19.

     e.   In December of 2020, Complainant submitted a Security Incident Report (SIR) with respect to a PII spill where management included what Complainant believed to be PII in Complainant's disciplinary and performance records and on January 2, 2021, the Office of Integrity Command Center emailed Complainant's private information regarding the SIR to 122 USCIS managers.

20.     On March 2, 2020, Complainant was again denied the reasonable accommodation of a lumbar support chair.

21.     On March 20, 2020, Complainant was given a negative interim performance review.

22.     On September 10, 2020, Complainant was placed on a Performance Improvement Plan (PIP).

23.     On November 17, 2020, Complainant was informed that she failed her PIP.

24.     On December 21, 2020, Complainant was issued a proposed removal from Federal Service.

25.     On February 3, 2021, Complainant was informed she was not allowed to add Schedule A status to an application for the position Investigative Specialist, Announcement FVD-2021-0001.

26.     On February 16, 2021, Complainant's supervisor denied approval for Complainant to apply to a detail opportunity.

27.     On March 24, 2021, Complainant was denied approval for the HHS Southwest Border Support Opportunity Detail.

28.     On April 1, 2021, Complainant was terminated from her position.

29.     On or about April 1, 2021, Management offered Complainant a settlement of resignation in lieu of termination in exchange for signing an agreement to not seek or accept employment with the USCIS in the future.

30.     Ms. Willard also complained that the Agency was unfairly and discriminatorily using race as a factor in the determinations made regarding those seeking entry into the country to escape persecution.

31.     Subsequent to those complaints, Complainant has unreasonably been targeted for discipline, close scrutiny of her work and placed on a Performance Improvement Plan that did not comply with the Collective Bargaining Agreement or the current law and statutes in effect concerning PIPs.

32.     Ms. Willard's supervisor, Melanie Gordon, retired in 2019.  She was replaced by a new supervisor who was new to the department.  Immediately upon becoming the supervisor, Ms. Vinyard-Jacoby placed Complainant on 100% review of all work product.

33.     Ms. Vinyard-Jacoby's actions were unprecedented and discriminatory.

34.     The discriminatory nature of the conduct is evidenced by the supervisor's comments that she was placed there to terminate Ms. Willard and that she had "heard" of Complainant's issues.

35.      Ms. Jacoby, without specifically identifiable evidence, determined that Ms. Willard was a "poor performer" before she even had the opportunity to review Ms. Willard's work.  She used that to justify an unprecedented 100% review of all work product.

36.     No other individual has been placed on 100% review of all of their work product in the manner in which Ms. Willard has.

37.     Although Ms. Willard had at all times previously met expectations in her performance reviews, the unprecedented action of her new supervisor micromanaging every single action taken by Ms. Willard is pretextual for discrimination.  Her supervisor also engaged in assaultive behavior toward plaintiff.

38.     Because of the sensitive nature of the work they handle, all adjudicators have the final determination letters they send out reviewed for accuracy, clarity and completeness.  If those letters are found to be something less than accurate, clear or complete, they are returned to the adjudicator for additional materials to be included or a rewrite.  This kind of oversight is routine.

39.     The returning of letters for additional information or rewriting is common and does not count against the adjudicators.  However, those returns did count against Ms. Willard.

40.     Similarly, letters addressed to potential applicants are also always reviewed for accuracy and completeness.  All other adjudicators have had letters returned for correction.  Only Ms. Willard's letters have been deemed unacceptable.

41.     Complainant's letters have been deemed unacceptable despite earlier commendations on Ms. Willard's communication and writing abilities.

42.     Ms. Willard's subsequent supervisor, Ms. Smith, continued the 100% review of all work product of Complainant.  She took pains to describe "errors" made by Ms. Willard although there was no established standardization of the work product.

43.     Significant variance appears between supervisors regarding the type of letters to send, the information to be found in those letters and what constitutes an "error."

7

44.    This lack of exactitude makes it impossible to discern in each given situation how the adjudicative materials should be assembled and written.

45.    Before her complaints of discrimination, Ms. Willard's manner of writing and assembling the adjudicative materials was acceptable.

46.    Once Ms. Willard was placed on 100% review, she was stripped of discretion in her job duties.  At the same time, she was rebuked for failing to use discretion in those same duties.

47.    When the agency informed Complainant of the Notice of Intent to Remove, it did not provide Complainant with the basic information necessary to rebut or dispute the allegations made against her.

48.    She was not allowed to review any file that is listed in the accusations against her and the reference numbers of all of the cases were redacted so she could not dispute the accuracy of the Management's account.

49.    When Ms. Willard attempted to receive advice from another adjudicator to make her performance as good as that adjudicator, she was told that she was to receive all information directly from her supervisors and not from other persons with knowledge.

50.    The PIP foisted upon Complainant was used as a punitive device and not as an attempt to rehabilitate Ms. Willard.

51.    Since the Executive Order signed by President Trump (and now vacated by President Biden), PIPS have been reduced to 30 days as a general rule.

52.    However, in this Agency, the standard PIP is much longer because of the time issues involved.  Per the Collective Bargaining Agreement, a PIP on any product line was supposed to include sixty days of work.  As the Collective Bargaining Agreement is a contract between management and employees, executive orders do not override that agreement.

8

53.     Complainant was given only 45 days of work product.

54.     Given the short time frame, the work product results set forth by the Agency actually show that Ms. Willard performed at the expected level during the PIP.

55.     Despite actually meeting the performance standards of the PIP, Ms. Willard was terminated.

56.     As a direct and proximate result of the conduct of Defendants and the conduct of the supervisors and managers, Complainant suffered grievous injury and damage, including but not limited to past, present, and future lost wages, benefits, earnings and earning capacity, mental anguish, pain, humiliation, embarrassment, depression, anxiety, anger, physical manifestations of emotional distress and physical injury, and lost enjoyment of life.

## COUNT 1:  AGE, DISABILITY, SEX AND DISCRIMINATION BASED UPON PROTECTED ACTIVITY
### DISPARATE TREATMENT

57.     Complainant hereby incorporates by this reference each and every allegation found in paragraphs 1–56.

58.     Complainant, a disabled, Caucasian female over the age of 40, is a member of a protected class.

59.     She was qualified for the position she held at the USCIS and met her employer's legitimate performance expectations.

60.     Complainant suffered adverse job actions when management engaged in the actions including but not limited to:

    a.     Terminated Complainant from her employment following her complaints of discrimination;

    b.     Gave Complainant a PIP;

    c.     Began undermining her work so that she could not be successful;

9

d.      Made false allegations regarding Complainant's work and conduct;

e.      Other events as set forth in the Statement of Facts.

61.      The Agency and Management Officials treated similarly situated non-disabled male employees over the age of 40 more favorably than Complainant.

62.      As a direct and proximate result of the conduct of Defendants and the conduct of the supervisors and managers, Complainant suffered grievous injury and damage, including but not limited to past, present, and future lost wages, benefits, earnings and earning capacity, mental anguish, pain, humiliation, embarrassment, depression, anxiety, anger, physical manifestations of emotional distress and physical injury, and lost enjoyment of life.

## COUNT 2  HOSTILE ENVIRONMENT BASED ON AGE, DISABILITY, SEX AND  REPRISAL ALL DEFENDANTS

63.      Complainant hereby incorporates by this reference each and every allegation found in paragraphs 1–56.

64.      During the course of Complainant's employment with the Defendant, Complainant experienced a hostile environment based upon her age, disability, sex, and protected activity in that:

f.      Complainant was subjected to harassment;

g.      The harassment was unwelcome;

h.      The harassment was based upon Complainant's race;

i.      The harassment was sufficiently severe or pervasive that a reasonable person in Complainant's position would find Complainant's work environment to be hostile or abusive;

j.      At the time the harassment occurred and as a result of it, Complainant believed the work environment to be hostile or abusive;

k.      Defendants knew or should have known of the harassment; and

l.      Defendants failed to take prompt, appropriate corrective action to end the harassment.

65.     As a direct and proximate result of the conduct of Defendants and the conduct of the supervisors and managers, Complainant suffered grievous injury and damage, including but not limited to past, present, and future lost wages, benefits, earnings and earning capacity, mental anguish, pain, humiliation, embarrassment, depression, anxiety, anger, physical manifestations of emotional distress and physical injury, and lost enjoyment of life.

## COUNT 3:  RETALIATION
## ALL DEFENDANTS

66.     Complainant hereby incorporates by this reference each and every allegation found in paragraphs 1–56.

67.     Complainant complained to Defendants her concerns that she was being discriminated against directly and through her EEO informal counseling that occurred in September 2021 as well as her later formal complaint.

68.     Complainant reasonably believed that Complainant was being harassed and/or discriminated against on the basis of race and sex or age.

69.     Defendant engaged in adverse actions against the Complainant including but not limited to the following actions:

a.      Terminating Complainant from her employment following her complaints of discrimination;

b.      Giving Plaintiff a PIP;

c.      Undermining her work so that she could not be successful;

d.      Other events as set forth in the Statement of Facts.

11

70.     Complainant's complaints of racial and sex-based harassment, disability and/or age discrimination were contributing and/or motivating factors in the adverse actions taken against Complainant.

71.     As a direct and proximate result of the conduct of Defendants and the conduct of the supervisors and managers, Complainant suffered grievous injury and damage, including but not limited to past, present, and future lost wages, benefits, earnings and earning capacity, mental anguish, pain, humiliation, embarrassment, depression, anxiety, anger, physical manifestations of emotional distress and physical injury, and lost enjoyment of life.

## COUNT 4:  42 U.S.C. 1983 DUE PROCESS VIOLATION; IMPAIRMENT OF CONTRACT

72.     Plaintiff hereby incorporates by this reference each and every allegation found in paragraphs 1–56.

73.     President Donald J. Trump issued an executive order preempting the collective bargaining agreements for Federal Employees.  That executive order limited the duration of Performance Improvement Plans and made it easier to terminate Federal employees.

74.     This executive order, enforced by the USCIS,  impaired the collective bargaining agreement for the USCIS as the CBA for the USCIS mandated PIPs of at least 60 days, usually 90 and granted due process rights to employees given a notice of intent to terminate.

75.     Plaintiff was therefore deprived of due process of law by virtue of the Presidential executive order that was enforced by USCIS.

76.     As a direct and proximate result of the conduct of Defendants and the conduct of the supervisors and managers, Complainant suffered grievous injury and damage, including but not limited to past, present, and future lost wages, benefits, earnings and earning capacity, mental

anguish, pain, humiliation, embarrassment, depression, anxiety, anger, physical manifestations of emotional distress and physical injury, and lost enjoyment of life.

WHEREFORE, Complainant respectfully prays that this Court:

1.     Issue judgment against the Defendants for all the damages that Complainant has incurred, including without limitation, physical and personal injury, emotional distress, back pay, future pay, lost earnings, lost earning capacity, special damages, and all compensatory damages to which the Complainant is entitled;

2.     Issue judgment against the Defendants for equitable or injunctive relief including returning Complainant to a position commensurate to that from which she was terminated;

3.     Award Complainant her reasonable attorneys' fees, costs, and expenses;

4.     Award to Complainant any and all such further relief as may be equitable and just.

## DEMAND FOR TRIAL BY JURY

Complainant hereby demands a trial by jury.

Respectfully submitted,


_/s/ Rebecca M. Randles_
REBECCA M. RANDLES                    KS #16832
**RANDLES MATA, LLC**
851 NW 45th Street
Suite 310
Kansas City, Missouri 64116
(816) 931-9901
(816) 931-0134 (FAX)
rebecca@randlesmatalaw.com

Attorney for Complainant