IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CHERI WILLARD,<br><br>      **Plaintiff,**<br><br>      v.<br><br>ALEJANDRO MAYORKAS, in his capacity as Secretary of the Department of Homeland Security,<br><br>      **Defendant.** | Case No. 2:21-cv-2538-HLT-GEB |

**ORDER**

Plaintiff filed this case on November 21, 2021. Doc. 1. She alleges Defendant discriminated against her because of her age, sex, and disability and retaliated against her because she engaged in protected activity. Defendant moved to dismiss her claims. Doc. 8. Plaintiff failed to respond to Defendant's motion, so the Court issued a show cause order directing her to explain why she failed to timely respond and to file a response. Doc. 11 at 1. Plaintiff filed both. Docs. 12 and 13. And Defendant replied to the motion. Doc. 14.

Because Plaintiff's failure to timely respond to the motion to dismiss stems from a lack of diligence rather than excusable neglect, the Court deems her response untimely and takes up Defendant's motion without the benefit of it. D. Kan. Rule 7.4(b). The Court finds after review of the motion that Plaintiff fails to plausibly allege her claims, so the Court dismisses her claims under Rule 12(b)(6).

**I.    SHOW CAUSE ORDER**

Defendant filed the motion to dismiss on March 23, 2022. Doc. 8. Plaintiff's response was due on April 13, 2022. She did not timely respond, so the Court thus entered a show cause order about a week later. The Court noted that Plaintiff is represented by counsel and that counsel had

been warned in other cases about failing to timely respond to motions. The Court then directed Plaintiff to do the following on or before April 27, 2022: (1) explain, in writing, why Plaintiff failed to timely respond to Defendant's motion to dismiss; and (2) file a response to Defendant's motion to dismiss. Doc. 11 at 1. Plaintiff timely responded to the show cause order and filed an opposition to the motion. Docs. 12-13. The Court now determines whether Plaintiff has shown cause for failing to timely respond to Defendant's motion.

D. Kan. Rule 7.4(b) states that a party or attorney who does not timely respond to a motion waives the right to later do so absent a showing of excusable neglect. *See also* Fed. R. Civ. P. 6(b)(1)(B). Excusable neglect is a "somewhat elastic concept and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380, 392 (1993). The determination is ultimately an equitable one that requires a court to consider all relevant circumstances including (1) the danger of prejudice to the nonmoving party, (2) the length of delay and its potential impact, (3) the reason for the delay, and (4) whether the movant acted in good faith. *Id.* The Tenth Circuit has noted that fault in the delay is "a very important factor—perhaps the most important single factor—in determining whether neglect is excusable." *Biodiversity Conservation All. v. Bureau of Land Mgmt.*, 438 F. App'x 669, 673 (10th Cir. 2011) (unpublished).

The first, second, and fourth factors weigh in favor of a finding of excusable neglect. There is no apparent danger of prejudice to Defendant by the relatively short delay, and there is no indication that Plaintiff or Plaintiff's counsel acted in bad faith. But the third factor necessitates a conclusion that excusable neglect does not exist.

Plaintiff's counsel explains that she did not timely respond to the motion or seek an extension because "she did not receive the emails from the court indicating that [Defendant's

motion to dismiss] had been filed and the response date was therefore not calendared." Doc. 13 at 2. She also notes that she "has had an ongoing issue with the server system in her office whereby emails are not timely received." *Id*. at 1. Counsel then explains that she has purchased an "entirely new server and system," but the new server "is not completely functional." *Id*. So her staff "is now assigned to physically go online one time per week and check that no new pleadings have been filed in each case that is on file with any court." *Id.*

Plaintiff's counsel's failure to check the docket and keep apprised of this case despite knowing about ongoing server issues is neglect that is not excusable. Plaintiff's counsel has been struggling with server issues since at least 2019. *See K.D. v. St. Joseph Sch. Dist.*, No. 5:18-cv-6113, Doc. 49 (W.D. Mo. 2019) (explaining that she failed to meet certain deadlines and outlining server issues). Her instant response again identifies an "ongoing issue with the server system in her office." It is unclear whether the same server issue persisted or a new one occurred, but Plaintiff's counsel knew that she was not timely receiving emails. And despite this knowledge she did not check the docket in this case for about one month (i.e., between March 23 and April 20) even though she knew Defendant would be responding to the complaint.

Plaintiff's counsel has an obligation to monitor the court's docket. *See Brown v. Zarek*, 1998 WL 738340, at *1 (10th Cir. 1998) ("It is the litigant's affirmative duty to monitor the court's docket."). Counsel knew that she was not timely receiving emails yet did not find another way to stay informed about the case or access the electronic docket, which she could readily do. Her failure to timely respond to the motion thus stems from a lack of diligence and not excusable neglect. *Biodiversity Conservation*, 438 F. App'x at 673; *Yeschick v. Mineta*, 675 F.3d 622, 629-31 (6th Cir. 2012) (finding no abuse of discretion and noting that "we emphasize that regardless of whether email notifications are received, parties continue to have a duty to monitor the court's

3

docket"); *Robinson v. Wix Filtration Corp.*, 599 F.3d 403, 413 (4th Cir. 2010) (same); D. Kan. Civ. Admin. P. § II(H)(1), https://ksd.uscourts.gov/index.php/rules/ ("Problems on the filer's end, such as connection problems, problems with the filer's Internet Service Provider (ISP), or hardware/software problems, will not constitute a technical failure under these procedures nor excuse an untimely filing").

The Court realizes this outcome might seem unforgiving. But the neglect in this case is not excusable particularly given that counsel knew Defendant would be responding to the complaint, knew that she had ongoing server issues, and did nothing for about a month to stay informed of the docket. The Court thus takes up the motion to dismiss without the benefit of Plaintiff's response[1] and considers the merits of the motion. *See Neighbors v. Lawrence Police Dep't*, 2016 WL 3685355, at *1 (D. Kan. 2016) (analyzing the merits of a motion to which the plaintiff failed to respond).

## II.  MOTION TO DISMISS

Plaintiff alleges that she is a disabled Caucasian female over the age of 40 who has engaged in prior protected activity including raising concerns about racism in the processing of applications by individuals seeking to gain admission to the United States. Doc. 1 at 3. Defendant terminated Plaintiff's employment on April 1, 2021. *Id.* at 6. Plaintiff now brings disparate treatment, hostile work environment, and retaliation claims under Title VII and a due process/impairment of contract claim under § 1983.

Defendant moves to dismiss Plaintiff's complaint for failure to state a claim under Rule 12(b)(6) for multiple reasons. A complaint survives a Rule 12(b)(6) challenge when it contains

---

[1] The Court notes however that the outcome of Defendant's motion does not change even when Plaintiff's response is considered. The complaint still fails to state a plausible claim even when the response is considered. Plaintiff's arguments do not overcome the deficiencies identified in the motion and do not demonstrate that she alleges a plausible claim.

"sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court will accept as true all well-pleaded allegations in the complaint but need not accept legal conclusions. *Id*. And conclusory statements are not entitled to the presumption of truth. *Id*. at 679.

**First**, Defendant contends that Plaintiff's claims stemming from her termination are untimely and must be dismissed. The Court agrees based on the instant record. Plaintiff was a federal employee who had her employment terminated. Plaintiff alleges that she filed an administrative complaint and that the agency issued a final decision in August 2021. Doc. 1 ¶¶ 10-11. Plaintiff then filed this lawsuit about two months later. Doc. 1.

The problem is that Plaintiff had to file claims stemming from her termination within 30 days of receipt of a final decision. The Civil Service Reform Act of 1978 provides gradual protections for evaluating personnel actions against federal employees. Pub L. No. 95-454, 92 Stat. 1111 (codified as amended in scattered sections of 5 U.S.C.). If the personnel action is particularly serious (e.g., termination), the employee has a right to appeal the agency's decision to the Merit Systems Protection Board ("MSPB"). "When an employee complains of a personnel action serious enough to appeal to the MSPB <u>and</u> alleges that the action was based on discrimination, [the employee] is said (by pertinent regulation) to have brought a 'mixed case.'" *Kloeckner v. Solis*, 568 U.S. 41, 44 (2012) (emphasis denoted in original by italics).

Here, Plaintiff had a mixed case because she complained about her termination, which is a personnel action serious enough to appeal to the MSPB, and alleged that her termination was based on discrimination and retaliation. *See generally* Doc. 1; *see also* Doc. 1 at ¶ 12 (alleging that all claims in her complaint were considered during the administrative investigations). A federal

5

employee bringing a mixed case may proceed in a variety of ways. Relevant here, the federal employee with a mixed case may:

> [F]irst file a discrimination complaint with the agency itself, much as an employee challenging a personnel practice not appealable to the MSPB could do. If the agency decides against her, the employee may then either take the matter to the MSPB or bypass further administrative review by suing the agency in district court.

*Kloeckner*, 568 U.S. at 45 (internal citations omitted). Plaintiff alleges that the agency decided against her. Under the regulations, Plaintiff had thirty days from receipt of the agency's decision to file in district court. *See* 29 C.F.R § 1614.310 (stating thirty-day deadline); 29 C.F.R. § 1614.302. She did not. Instead, she filed her complaint nearly two months later. Because Plaintiff failed to timely file her termination claims in district court, and this failure is evident from the face of her complaint based on her own allegations, the Court dismisses her claims stemming from her termination. *See Bobelu-Boone v. Wilkie*, 526 F. Supp. 3d 971, 980 (D.N.M. 2021) (dismissing mixed case termination claim as untimely).[2]

**Second**, Defendant argues that Plaintiff has not plausibly alleged a disparate treatment claim (Count I). The Court again agrees. Plaintiff generally alleges that "Agency and Management Officials treated similarly situated non-disabled male employees over the age of 40 more favorably

---

[2] The Court does not consider Plaintiff's response for the reasons stated above. But, even if it did, Plaintiff's response does not change the outcome on this issue. Plaintiff alleges in the complaint that she timely filed this lawsuit within 90 days of the receipt of the Final Agency Decision. Doc. 1 at 2. Under 29 C.F.R. § 1614.407(a), an individual who files claims for individual relief under Title VII may file a civil action in federal district court "[w]ithin 90 days of receipt of the agency final action." "However, the 90-day period applies to a non-mixed case claim only, in which case a federal employee can proceed by initially filing a claim with the EEO department of the employing agency." *Bobelu-Boone*, 526 F. Supp. 3d at 979 (citing *Kloeckner*, 568 U.S. at 47). Indeed, the Final Agency Decision, which the Court did not consider and merely cites to address Plaintiff's confusion, explains that two separate notices are attached regarding Plaintiff's appeal rights. Doc. 9-1 at 24. The first notice contains information for appealing claims 8-16 and 18. It provides that Plaintiff can appeal these claims to the EEOC within 30 days or file a civil action within 90 days. *Id.* at 25-26. The second notice contains information for appealing claim 17 (the wrongful termination claim). It provides that Plaintiff must appeal claim 17 to the MSPB or file a civil action within 30 days. *Id.* at 33; *see also* 29 C.F.R. § 1614.310.

than [her]." Doc. 1 at 10.³ But Plaintiff's assertion that she is "similarly situated" to other employees is just a legal conclusion, which is not enough to survive a Rule 12(b)(6) challenge. *See Hwang v. Kan. State Univ.*, 753 F.3d 1159, 1164 (10th Cir. 2014). A plaintiff must allege "some set of facts" that "taken together plausibly suggest differential treatment of similarly situated employees." *Id*.

And here, Plaintiff alleges <u>no</u> facts about similarly situated employees. She does not identify any non-disabled male employees over the age of 40 who had the same supervisor, who committed the same conduct, or who had a similar employment history. And she has no well pleaded facts explaining how such employees were treated more favorably than her. *See id.* (affirming dismissal of complaint where the plaintiff "has pleaded no facts about the non-disabled University employees who receive sabbaticals, let alone facts suggesting they are like her in any relevant way"). Thus, the Court dismisses Plaintiff's disparate treatment claim for failure to state a claim.

**Third**, Defendant argues that Plaintiff has not stated a plausible claim for hostile work environment (Count II). The Court agrees. The complaint generally alleges that Plaintiff was subjected to ridicule, increased scrutiny of her work, insults (e.g., "you aren't that smart"), and micromanagement. But this conduct is merely offensive and does not violate Title VII. *Bryant v. Neb. Furniture Mart*, 2021 WL 259294, at *8 (D. Kan. 2021). Rather, Title VII only prohibits conduct that is "severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive." *Id.*; *see also Payan v. United Parcel Serv.*, 905 F.3d 1162, 1170-71 (10th Cir. 2018) ("[R]un-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces is not the

---

³ The Court also notes that Plaintiff never alleges her disability.

stuff of a Title VII hostile work environment claim."). The allegations in the complaint do not come close to meeting this standard.

Moreover, the complaint fails to establish that the alleged conduct was due to her disability (which is never identified), sex, age, or prior protected activity. *See Payan*, 905 F.3d at 1170 (stating that the plaintiff must show that they were targeted for harassment <u>because of</u> their protected status); *see also Bekkem v. Wilkie*, 915 F.3d 1258, 1274-75 (10th Cir. 2019) (affirming dismissal of discrimination claim based on conclusory assertion that a reprimand was issued because the plaintiff was "female, from India, brown, Asian-Indian, and/or of the Hindu religion"). There are no facts plausibly suggesting a causal connection. Plaintiff's "lack of any details . . . makes it impossible to parse out her numerous theories of discrimination." *Bekkem*, 915 at 1275. Thus, the Court dismisses Plaintiff's disparate treatment claim for failure to state a claim.

**Fourth**, Defendant argues that Plaintiff has not stated a plausible claim for retaliation (Count III). The Court agrees. The elements of prima facie retaliation claim include: "(1) that she engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the material adverse action." *Id.* at 1267.

There are four possible instances of protected activity: (1) Plaintiff raising concerns about racism in the processing of applications by individuals seeking to gain admission to the United States, (2) Plaintiff's EEO informal counseling in September 2021, (3) Plaintiff's first formal complaint, and (4) Plaintiff's second formal complaint. Doc. 1 ¶¶ 14, 17-18, 67. The Court considers each.

The first instance of protected activity fails to allege a plausible retaliation claim because Plaintiff never identifies to whom she complained, when she complained, and how that complaint

is causally connected to any allegedly adverse action. *See Armour v. Universal Protection Servs.*, 724 F. App'x 663, 665 (10th Cir. 2018) (affirming dismissal of retaliation claim when plaintiff did not plausibly allege any facts that the defendant retaliated against her for engaging in a protected activity).

The second instance is equally flawed because her EEO informal counseling occurred in September 2021, which was several months after she was terminated. Principles of linear time preclude this retaliation claim. An action in the past can't be caused by an action that has not yet occurred. Stated differently, Plaintiff cannot be retaliated against for protected activity that had not yet occurred.

The third and fourth instances do plausibly allege protected activity. But Plaintiff then fails to plausibly allege the remaining elements of a prima facie case based on these protected activities. More specifically, Plaintiff filed her first formal complaint in June 2019 and outlined multiple grievances. Because these grievances occurred <u>before</u> she had engaged in any protected activity, these grievances can't be an adverse action stemming from protected activity. *See* Doc. 1 ¶ 18(a)-(g). Again, principles of linear time preclude it.

Thus, the Court is left to determine whether any action occurring <u>after</u> June 2019 constitutes an adverse action that is causally connected to her protected activities. Plaintiff initially fails to plausibly allege any adverse action. Her termination would be an adverse action, but she did not timely file in the district court as explained above. *See Godoy-Guzman v. Unified Gov't of Wyandotte Cnty.*, 2019 WL 6894529, at *8 (D. Kan. 2019) (holding that retaliatory acts that were not timely brought cannot serve as a basis for retaliation claim). And the other grievances she identifies simply aren't enough.

For example, Plaintiff contends that she was given counseling, had her work reviewed, and had meetings interrupted. But these are not materially adverse. *See, e.g.*, *Keller v. Crown Cork & Seal USA, Inc.*, 491 F. App'x 908, 914 (10th Cir. 2012) (finding general complaints "about strict application of policies, increased supervision, write-ups, means and methods of communication with her supervisors, and restrictions on her employment relationships . . . are in the nature of ordinary workplace tribulations; they do not rise to materially adverse actions sufficient to support a claim of retaliation"). She also contends she was denied a lumbar support. But this isn't enough either. *See Sanders*, 2012 WL 5985469, at *7 (holding that the denial of a request to use a heating pad was not a significant change to the plaintiff's employment). And her allegations about others undermining her work are too vague.

Plaintiff does allege that she was placed on a Performance Improvement Plan ("PIP") and failed her PIP. Placement on a PIP may constitute an adverse action if it immediately affects the individual's employment status. *See Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1224-25 (10th Cir. 2006) (holding that PIP was not materially adverse because it did not have an immediate effect on the plaintiff's employment status). But here Plaintiff does not allege such facts. She does not allege that the PIP immediately affected her employment status by demoting her, reducing her pay, or altering her benefits.

Even if Plaintiff had alleged an adverse employment action sufficient to support her retaliation claim, she still fails to plausibly allege a causal connection between it and her protected activity. She does not allege who knew about her formal complaints, when those people learned of her formal complaints, or how those people were involved in any of her grievances. This is particularly problematic given her allegations about a change in supervisor and the continuation of work reviews.

Plaintiff thus fails to plausibly allege a retaliation claim, so it is dismissed.

**Fifth**, Defendant argues that Plaintiff's § 1983 due process claim (Count IV) fails to state a claim because § 1983 is not applicable to the federal government. The Court agrees. Section 1983 is not applicable to the federal government, and it does not waive the government's sovereign immunity. *Belhomme v. Widnall*, 127 F.3d 1214, 1217 (10th Cir. 1997) (noting that the plaintiff's § 1983 claim "fails as a matter of law because this section applies to actions by state and local entities, not to the federal government"); *Farr v. U.S. Gov't*, 2022 WL 124032, at *3 (D. Kan. 2022). Accordingly, the Court dismisses this claim.

## III.  CONCLUSION

Plaintiff's complaint suffers from numerous deficiencies and generally recites run-of-the-mill workplace grievances untied to any unlawful act. Plaintiff never amended as of right or formally moved for leave to amend. The Court finds that she failed to plausibly allege her claims and dismisses them.[4]

THE COURT THEREFORE ORDERS that Plaintiff's opposition is untimely and is not considered.

THE COURT FURTHER ORDERS that Defendant's motion to dismiss (Doc. 8) is GRANTED. Plaintiff's claims are dismissed. This case is closed.

IT IS SO ORDERED.

Dated: July 19, 2022                     /s/ *Holly L. Teeter*
                                         HOLLY L. TEETER
                                         UNITED STATES DISTRICT JUDGE

---

[4] As repeatedly noted, the Court did not consider Plaintiff's opposition or anything beyond the four corners of the complaint. But even if the Court considered her opposition, it does not change the outcome. She fails to plausibly allege her claims even when her arguments are considered, and her passing and unspecific request for leave to amend does not comply with the local rules, identify the content she would add, or otherwise convince the Court she could overcome these deficiencies. Thus, even considering the opposition, the Court would dismiss these claims.